## Case No. 4,490a.

ENGLISH v. OCEAN STEAM NAV. CO.

[18 Betts, D. C. MS. 99.]

District Court, S. D. New York. April 1, 1851.[1]

BETTS, District Judge. The libel seeks damages for the non-delivery in good order of several cases of gloves and silks, shipped at Havre for New York on board the steamer Herman, belonging to the respondents. The fact that the goods were in a damaged condition when delivered here is fully proved. Two grounds of defence are set up. First, that there is no proof that the goods were shipped in good order, and second, that if they were injured in the transportation, the injury arose from one of the causes excepted in the bill of lading. The bill of lading signed by the agent of the respondents at Havre acknowledges to have received the cases of merchandise in question, in good order and condition, to be delivered at New York in the like good order and condition, (the acts of God, enemies, pirates, restraints of princes and rulers, fires at sea and on

shore, accidents from machinery, boilers, steam or any other accidents of the seas, rivers and steam navigation of whatsoever nature or kind excepted,) with a memorandum at the foot "weight and contents and value unknown, and not to be answerable for leakage or breakage." The libel avers the receipt of the goods on board the Herman and their transportation to the city of New York and delivery here to the libellants, and alleges they were damaged on the voyage in the ship, to the amount of $1,950.03 not arising from any of the causes excepted in the bill of lading and were not delivered in like good order as when shipped. The answer admits the receipt of the said cases of merchandise and the execution of the bill of lading therefor, at Havre, but avers the contents of the cases were then unknown to the respondents or their agents, nor did they know whether the contents thereof were or were not in good order and condition. The answer asserts that the goods were safely, securely, prudently and properly stowed; and avers that no notice whatever was given them by the shippers of the goods, of the contents of the cases, and they and their agents were ignorant thereof until after the delivery of the cases to the libellant, when they were informed the cases contained kid gloves and cravats, "a species of goods and merchandise requiring great and unusual care and caution and particularly sensitive to injury from a slight degree of heat and exposure," and insists, the goods if damaged on the voyage, were not so by means of negligence or omission on the part of the respondents, but from causes named in the exception to the bill of lading.

The libellant proved that the goods were damaged by spots or stains, by being crisped or stiffened, baked and rotted to an amount estimated by appraisers at $1,950.03, and that the injury was apparently caused by exposure to excessive heat. That when the cases were opened in libellant's store the goods were found so hot as to render it uncomfortable to handle them. He proved that heat would have the like effect on goods of that description, put up and shipped in good order. It was also proved that similar goods had been imported in steamships without receiving injury, and evidence was given tending to show that the apartment of the Herman in front of the engines and boilers, was kept overheated on that voyage from the want of sufficient ventilation. The libellant proved that these goods were carefully put up first in paper boxes, and then in cases or packages, which were secured against wet and external injury, in the manner usually employed in packing those description of goods for exportation, and that all the external envelopes appeared in good condition. The respondents proved that these goods are subject to stains, and spotting, if packed in a damp state, or exposed to external dampness on the voyage, from their

---

[1] [Affirmed in Case No. 4,490.]

delicate character and the natural effect of such state of moisture upon them when confined in packages.

It was proved by the master, engineer and other officers of the ship, that the voyage was exceedingly rough, the weather being tempestuous to an unusual degree. That the dashboard in the boiler gave way from the pitching of the ship, in a heavy sea, during a violent and protracted gale of wind, and that steam escaped from the boiler through rivet holes worked loose into the body of the ship, and would naturally force itself forward. This gale and its consequences were experienced early in the voyage and long enough before the arrival of the ship in New York to have all extra heat occasioned by it disappear. The whole testimony, however, renders it very clear that if these goods had been stowed aft the machinery and boilers, or if the forward apartment had been sufficiently ventilated, the escape of the steam which occurred would have occasioned no damage; nor is it made to appear that the extra escape of steam during the storm at all increased the heat of the forward room of the ship beyond what was experienced in the ordinary condition of the ship. Extra ventilators were supplied that room, after this voyage. The captain testified he has brought out similar goods in the ship without injury to them, and the mate says the heat from steam was not in his opinion such as would bake the gloves. The forward room, used for stowing goods, was separated from the boilers by an inner bulk-head, made of boiler iron rivetted together and extending across the ship and from deck to ceiling, leaving a space of about 9 inches between it and the boilers, so that with proper ventilation that room would be always a suitable place for the stowage of cargo. On this voyage, as usually, cargo was not intended to be stowed against the bulk-head, but 8 or 9 inches from it. There was no proof as to the particular part of the ship in which these cases were stowed.

The libellant having proved by satisfactory evidence, that the goods were delivered damaged at the close of the voyage, the law imposes on the respondents the burthen of showing it was occasioned by some of the causes enumerated in the exception to the bill of lading, unless means were used to conceal the character of the goods and impose on the carriers at the time they were laden on board. The law casts on the ship owner the burthen of proving that the loss has so arisen as to exempt him under the exceptions in his bill of lading, otherwise he stands absolutely bound for the safe delivery of the goods on his general responsibility as carrier. Story, Bailm. § 529. If the injury in this case has been caused by radiation of heat from the bulk-head of the stowage room or boilers, it would not be within the exceptions of the bill of lading, and it devolved upon the respondents to show the goods so stowed that the damage could not be so incurred, or in any other way attributable to negligence, or want of due precaution in their stowage. So also they are required to prove satisfactorily that the species of injury received by these goods, the baking, stiffening, etc., would be the probable effect of the action of steam in its usual state in steamships or especially as it was found in the ship during this voyage. Those proofs are not made. On the contrary the evidence shows that before and since this voyage the ship has carried like goods without their receiving injuries from steam or the usual heat of the vessel and it fails to make it appear that the extra discharge of steam during the gale, on this voyage, pervaded the ship so as to produce any damage; and accordingly the liability of the respondents is not discharged, if the preliminary evidence given by the libellant is sufficient to charge them.

It is strongly insisted for the respondents, that the libellant must prove the goods claimed by him were put on board the ship in good order, before he can call on them to account for the injury or pay his loss. The law is not so. Even as against underwriters the bill of lading is prima facie sufficient proof of the interest of the shipper, and that the goods were received on ship-board in good order. Some nisi prius cases in England for a time questioned this doctrine in respect to underwriters, but it is now considered settled by deliberate adjudications in that country, where the master makes the acknowledgment absolute, without the saving of "contents unknown." 2 Parks, Ins. (8th Ed.) 859, § 10; 2 Phil. Ins. 489, 490. The effect of the latter reservation is only to require proof beyond the bill of lading, that the goods were actually laden on board. Of that fact there is no question in this case. To the other particular, that the goods were in good order and condition, when shipped, the acknowlegment of the bill of lading is unqualified, and, as against the owners or master, it is an admission obligatory upon them at law, and excuse the shipper giving any other evidence in the first instance. Cow. & H. Notes to Phil. Ev. 1439; Price v. Powell, 13 Comst. [13 N. Y.] 322. The case of Barrett v. Rogers, 7 Mass. 297, is a direct authority upon this point. The question was raised and argued before the supreme court of Massachusetts whether the plaintiff holding such an admission in the bill of lading was required to give further evidence that the goods when shipped were in good order, and the court decided he was not. Such I am satisfied is the general acceptation of the relation of shipper and master or owner, and the general usage of trade in this respect. It seems to me founded in good policy also, for if the master does not intend to assume the

risk of the proper package of the goods, it is no less proper he shall qualify his responsibility in this particular than that of contracts, so that the shipper may have notice to be provided with proof to the fact, if an after controversy should render it necessary. The acknowledgment shall have against the owner and master the ordinary effect of an admission or receipt, open to explanation on his part, but prima facie evidence of the fact in favor of the party holding it. Decree for the libellant for $1950.03 and interest at 6 per cent. from the day of the delivery of the goods subject to all proper allowances of freight, etc., to respondents. If the balance is not adjusted by agreement between the parties, a reference to a commissioner must be had to state the amount.